UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DAVIN WASHINGTON | CIVIL ACTION |
| VERSUS | NO. 15-2272 |
| SOCIAL SECURITY ADMINISTRATION | SECTION "J" (3) |

**REPORT AND RECOMMENDATION**

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying his claim for supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"). The matter has been fully briefed on cross-motions for summary judgment and is ripe for review. For the following reasons, IT IS RECOMMENDED that plaintiff's motion for summary judgment be DENIED, the Commissioner's cross-motion be GRANTED, and plaintiff's case be DISMISSED WITH PREJUDICE.

**I. BACKGROUND**

Plaintiff filed an application for SSI on April 8, 2010, alleging a disability onset date of January 11, 2010. (Adm. Rec. at 177-80). Plaintiff alleged disability due to having been shot three times in the head and leg and paralysis of the right side of his body. (*Id.* at 201). Plaintiff, born on March 15, 1988, was 21 years old on the date on which he alleged disability and 25 years old at the time of the final administrative decision. (*Id.* at 199). Plaintiff has an eighth-grade education. (*Id.* at 205). Plaintiff has past work experience as a cook at a fast-food restaurant and a laborer. (*Id.* at 206).

Defendant initially denied plaintiff's application on August 25, 2010. (*Id.* at 86-89). Plaintiff sought an administrative hearing, which defendant held on May 9, 2011. (*Id.* at 70). After the administrative hearing, the Administrative Law Judge ("ALJ") denied plaintiff's application for SSI. (*Id.* At 70-77). Plaintiff appealed, and the Appeals Council remanded the case to the ALJ for further evaluation and to obtain additional evidence. (*Id.* at 82-84).

On remand, the ALJ held another administrative hearing. (*Id.* at 26-42). Plaintiff and a vocational expert ("VE"), Mary Elvir, testified at the hearing. At the hearing, plaintiff moved to amend his application for a closed period of disability from January 11, 2010 through March 1, 2012. (*Id.* at 10). The ALJ granted this request. (*Id.*).

On October 31, 2013, ALJ issued a decision in which he found that plaintiff had not been disabled since March 15, 2010. (*Id.* at 10-20). In the decision, the ALJ concluded that plaintiff has the severe impairment of status traumatic brain injury secondary to gunshot wound to the head, status post gunshot wound to the head with craniotomy, and seizure disorder. (*Id.* at 13). The ALJ held that plaintiff does not have an impairment that meets or medically equals a listed impairment under the regulations. (*Id.*). The ALJ found that plaintiff retains the residual functional capacity ("RFC") to perform light work activity as defined in 20 C.F.R. § 404.1567(b) except that he would need to avoid minor exposure to hazardous machinery and heights. (*Id.*). The ALJ concluded that plaintiff can perform his past relevant work as a fast food worker. (*Id.* at 19). The ALJ thus denied plaintiff SSI. (*Id.* at 20).

Plaintiff asked the Appeals Council to review the ALJ's conclusion that he is not disabled. (*Id.* at 5-6). On April 26, 2015, the Appeals Council denied plaintiff's request. (*Id.* at 1-3).

Plaintiff then timely filed this civil action.

## II.     STANDARD OF REVIEW

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards to evaluate the evidence.  See 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir.1995); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir.1991).   If the Commissioner's findings are supported by substantial evidence, this Court must affirm them.   *Martinez*, 64 F.3d at 173.

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401(1971); *Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002).    It is more than a scintilla, but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir.1993).   A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision.  See *Boyd v. Apfel*, 239 F.3d  698, 704 (5th Cir. 2002).

A district court may not try the issues *de novo*, re-weigh the evidence, or substitute its own judgment for that of the Commissioner.   *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995); *Spellman*, 1 F.3d at 360. The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. See *Arkansas v. Oklahoma*, 503 U.S. 91, 112-13 (1992).

Conflicts in the evidence are for the Commissioner to resolve, not the courts.  *Carey,* 230 F.3d at 135.  Any of the Commissioner's findings of fact that are supported by substantial evidence are conclusive.  *Ripley*, 67 F.3d at 555.  Despite this Court's limited function on review, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it.  *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir.1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir.1990).

## III.   ENTITLEMENT TO BENEFITS UNDER THE ACT

To be considered disabled and eligible for disability benefits under the Act, plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is considered disabled only if his physical or mental impairment is so severe that he is unable to do not only his previous work, but can not, considering his age, education and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which he lives, whether a specific job vacancy exists, or whether he would be hired if he applied for work.  42 U.S.C. § 1382(a)(3)(B).   The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.  20 C.F.R. §§ 404.1501 - 404.1599 & Appendices, §§ 416.901t-416.988 (1995).    The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.    *Id*. §§ 404.1520, 416.920; *Greenspan v. Shalala*,

4

38 F.3d 232, 236 (5th Cir.1994).

In *Shave v. Apfel*, 238 F.3d 592 (5th Cir. 2001), the Fifth Circuit restated the five-step procedure to make a disability determination under the Social Security Act:

> The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.

*Shave*, 238 F.3d at 594 (quoting *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir.1999)).  If the ALJ determines that a plaintiff is not disabled under Step V of the five-part test, the ALJ must establish that the claimant has a "residual functional capacity," given the claimant's age, education, and past work experience, to perform other work available in the national economy.  *Leggett v. Chater*, 67 F.3d 558, 564 n.11 (5th Cir. 1995).   Step V also requires the Commissioner to use the medical-vocational guidelines to make her disability determination.  *Id.*

The four elements of proof weighed to determine whether evidence of disability is

substantial are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir.1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id*.

## IV. ISSUES ON APPEAL

There are six issues on appeal:

(1) Whether the ALJ erred when he concluded that plaintiff's traumatic brain injury did not support a finding of disability.

(2) Whether the ALJ properly considered a closed period of disability.

(3) Whether the ALJ erred when he concluded that plaintiff gave informed consent to the closed period of disability.

(4) Whether the ALJ erred when he concluded that plaintiff did not satisfy the requirements of a Listing.

(5) Whether substantial evidence supports the ALJ's RFC assessment.

(6) Whether the ALJ erred when he refused to consider plaintiff's "financial inducements" argument.

## V. ANALYSIS

### 1. Whether the ALJ erred when he concluded that plaintiff's traumatic brain injury did not support a finding of disability.

It is undisputed that plaintiff suffered a massive traumatic brain injury to the head and right leg from gunshot wounds on January 11, 2010. (Adm. Rec. at 13). Plaintiff points to evidence of dysphagia following central line and nasogastric tube placement, right sided weakness greater than the left, impaired mobility, cognitive communication deficits, impairments in self-care skills and

activities of daily living, pain, decreased insight, balance, and coordination. (*Id.* at 507). He also points to evidence of headaches, need for modified diet, deficits in cognitive skills, decreased muscle tone, elevated liver enzymes, kidney stones, and low phenytoin levels that have been an ongoing medication management concern. (*Id.* at 493, 520, 547-48).

As the Commissioner correctly points out, however, these medical records are dated – in no particular order – January 27, February 10, and March 3, 2010, (*see id.*), all dates within two-and-one-half months of his initial gunshot injury and before he underwent physical therapy and rehabilitation, and before his injuries healed. While plaintiff's evidence reveals that he may have had some negative physical and cognitive effects immediately after his injury, he has not demonstrated that those continued or that they resulted in work-related limitations. Indeed, the treatment records show that after he completed physical therapy, he had very few deficits. Physical examinations showed decreased right grip strength but were otherwise within normal limits. (*Id.* at 327-28, 331-32, 370-71). Plaintiff had mild confusion and cognitive deficits during his rehabilitation, but subsequent records show no such deficit. (Tr. 290-91, 327-28, 331-32, 370-71). Likewise, after plaintiff left inpatient rehabilitation in March 2010, the records demonstrate that no doctor noted any problem with his ability to think, to understand, or to interact with others. (*Id.* at 290-91, 327-28, 331-32, 370-71, 437-38, 672-73, 675-76, 704-05, 718-19, 742-43, 747-48).

The ALJ thoroughly examined plaintiff's rehabilitation records and determined that after rehabilitation, plaintiff could engage in past relevant work, noting specifically that since March 2012, plaintiff had worked as a crew member at McDonald's. (*Id.* at 14-19). While plaintiff's evidence may reveal symptoms of his traumatic event, they do not demonstrate work-related limitations. "The mere presence of some impairment is not disabling per se. Plaintiff must show

that [he] was so functionally impaired . . . that [he] was precluded from engaging in any substantial gainful activity." *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). Based on the evidence that plaintiff has cited, the ALJ properly found that said evidence demonstrates no limitations in his ability to perform his past relevant work, and substantial evidence supports the ALJ's findings.

## 2. Whether the ALJ properly considered a closed period of disability.

At the oral hearing before the ALJ on September 25, 2013, plaintiff's attorney asked the ALJ to consider a closed period of disability from his alleged onset date of January 11, 2010 through March 1, 2012, based on plaintiff's return to work at McDonald's in March 2012. (Adm. Rec. at 28-30). The ALJ allowed plaintiff and his attorney to discuss the matter off the record to ensure that plaintiff understood what the term "closed period" meant, and the ALJ then accepted the motion to amend to consider a closed period of disability. (*Id.* at 28-30).

Despite having sought a closed period of disability, plaintiff now argues that the ALJ erred when he considered it based on plaintiff's return to work. Plaintiff argues that he required a job coach, and thus the need for a job coach rendered the work accommodated. Despite his allegations that his job coaches met weekly "to attempt employment at the recommended site," the pages to which plaintiff cites demonstrate that the job coach observed him performing his job, at most, two times per month and would contact him weekly to ascertain his work schedule. (Doc. #16-1 at pp. 32, 42, 46). Further, the records demonstrate that his job coach merely visited him at his job to ascertain if he was performing the jobs within the limitations assessed for him, such as no heavy lifting. (*Id.*). Plaintiff successfully performed his job as evidenced by his manager ultimately asking that he be a crew trainer. (*Id.* at p. 47). The Court takes judicial notice of the fact that managers only ask well-trained and competent employees to train other employees. As the

Commissioner correctly notes, no manager wants a subpar employee training other employees in subpar methods. Plaintiff has failed to demonstrate that the work that he performed was in any way accommodated other than a restriction from lifting heavy items, a limitation to which the ALJ agreed by limiting plaintiff to no lifting over 20 pounds. (*Id.* at 13-19; Doc. #16-1 at pp. 42, 46). The Court finds that plaintiff has failed to demonstrate that though his work was accommodated to a certain extent, it was unsuccessful, and the ALJ properly considered only a period of closed disability from January 11, 2010 through March 1, 2012.

### 3. Whether the ALJ erred when he concluded that plaintiff gave informed consent to the closed period of disability.

After plaintiff's attorney asked for a closed period of disability, the ALJ asked plaintiff if he understood what that meant. (Adm. Rec. at 29). Incorrectly, plaintiff responded that it meant the agency was going to close his case. (*Id.*). The ALJ then stopped the hearing for a five-minute recess to allow plaintiff's attorney to explain to plaintiff what "closed period of disability" meant. (*Id.*). Afterward, the ALJ again asked plaintiff if he understood what it meant and plaintiff stated, "Meaning you're going to close it for the period of time and . . ." (*Id.*). The following exchange then ensued:

> ALJ: Counsel?
> ATTY: I explained to him, Your Honor, and he understands that he won't be receiving any monthly benefits that –
> ALJ: I'm only looking at the period 1/11/19 to 3/1/12. That's what I'll be looking at and I accept the motion to amend.
> CLMT: Yes, sir.

(*Id.* at 29-30).

Plaintiff now argues that this did not rise to the level of informed consent. In support of his

9

argument, plaintiff contends that he experienced a "severe traumatic brain injury that impacted his full understanding of an abbreviated period of disability." But plaintiff has failed to point to any evidence after March 2010 to substantiate his claim. It is without a doubt that immediately after he was shot in the head and underwent surgery, plaintiff experienced some cognitive deficits, and the record clearly reflects this. (*Id.* at 291, 294). However, by March 2010, a mere two months later, he was noted to have improved cognitively and be making "excellent progress." (*Id.* at 315). Subsequent medical records demonstrate no cognitive deficits; specifically, no doctor ever indicated difficulty with plaintiff's understanding of instructions, his medication regimen, or providing correct medical information and history. (*Id.* at 326-28, 330-32, 343-47, 357-58, 360, 370-71, 434-39, 443-45, 670-72, 675-76, 704-12, 742-48). Thus, the Court finds that the medical evidence does not support a finding that plaintiff was unable to give informed consent at the oral hearing.

  **4.  Whether the ALJ erred when he concluded that plaintiff did not satisfy the requirements of a Listing.**

Plaintiffs contends that the ALJ failed to fully evaluate the listing level impairments alleged at the hearing. Plaintiff argues that the Appeals Council directed the ALJ to utilize the elements of analysis found in 20 C.F.R. §§ 416.920(d), 416.925, and 416.926 in the remand order. However, plaintiff maintains that the ALJ omitted the elements of analysis found in Sections 416.920(d), 416.925, and 416.926 from the decision. Plaintiff contends that, to the contrary, the ALJ stated, "Listing 11.00, including 11.02 and 11.03 were specifically considered." (Adm. Rec. at 13). Plaintiff argues that contrary to the remand order's specific direction to the ALJ to utilize the elements of analysis found in Sections 416.920(d), 416.925, and 416.926, there is no other

10

evaluation as to the severity of the impairments alleged. Nor, he maintains, is there any discussion with regard to Listing 11.04B, which concerns traumatic brain injury argued at the hearing. Plaintiff contends that this significant omission constitutes harmful error and is consistent with the unusually hasty nature of the traumatic brain injury hearing.

A claimant can not be found disabled pursuant to the Appendix 1 Listings unless he can demonstrate that he meets or equals all of the specified medical criteria of any particular listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990) (finding that a claimant must provide medical findings that support each of the criteria for an equivalent impairment determination). After thoroughly examining the record, the Court finds that the ALJ properly determined that plaintiff did not have an impairment or a combination of impairments which met or equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 13). To support his contention, plaintiff argues that the ALJ erred when he found that plaintiff did not meet the requirements of Listing 11.02 and 11.03. However, plaintiff complains of seizures in his brief, and Listings 11.02 and 11.03 both deal with epilepsy. Listing 11.02 requires convulsive epilepsy documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month in spite of at least three months of prescribed treatment with daytime episodes (loss of consciousness and convulsive seizures) or nocturnal episodes manifesting residuals that interfere significantly with activity during the day. 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 11.02. Plaintiff has provided the Court with no evidence that he has seizures more than once a month.

Listing 11.03 requires non-convulsive epilepsy documented by a detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once

weekly in spite of at least three months of prescribed treatment. It also requires alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day. 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 11.03. As with Listing 11.02, the Court finds that plaintiff has not demonstrated the requisite number of seizures. To the contrary, despite plaintiff's noncompliance with his medication regimen (well documented at Adm. Rec. at 322, 331, 335, 338, 343, 461, 649, 652, 658, 681, 705, 744, 749), the record demonstrates few documented complaints of seizures after March 2010. (*Id.* at 326, 330, 360, 704-12). During his meeting with a vocational rehabilitation counselor, plaintiff alleged having three to four seizures the day before the meeting, but he admitted to the counselor that before that his last seizure had been eight to nine months earlier. (Tr. 739). He also informed the counselor that the frequency of his seizure activity varies. (*Id.*). Thus, the Court finds that plaintiff can not demonstrate the regularity of seizure activity required by Listings 11.02 or 11.03.

Plaintiff also contends that the ALJ should have considered Listing 11.04B, which requires a central nervous system vascular accident with significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station. 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 11.04B. The Court finds that again, plaintiff has failed to support his argument with cites to the record evidence that demonstrate the specific requirements. Plaintiff contends that the issue was "argued at hearing." (Doc. #16-3 at p. 18). While plaintiff generally alleges an inability to ambulate effectively, the record amply reveals medical records that he has a substantially normal gait. (*Id.* at 331-32, 370-71, 438, 443-44, 675-76, 704-05, 718-19, 742-43, 747-48). Plaintiff told his treating physician,

Monica V. Benson, M.D., that he walked "a lot" and only used a cane when going to the mall. (*Id.* at 435). At an evaluation for physical therapy on January 12, 2011, plaintiff complained of right shoulder tightening, neck pain, and cervical tightness. (*Id.* at 672). Significantly though, he did not complain of difficulty with his hands or with his ability to walk. (*Id.*). A physical examination demonstrated decreased grip strength but was otherwise normal. (*Id.* at 672-73). Moreover, the records that plaintiff submitted with his brief demonstrate that the only limitation that the Louisiana Vocational Services placed on him was an inability to lift heavy items. (Doc. #16-1 at pp. 1-53). Thus, the Court finds that the record supports the conclusion that plaintiff does not meet or equal the requirements of Listing 11.04B.

As his final argument, plaintiff asserts that he meets or equals the criteria in Listing 1.02, which requires major dysfunction of a joint characterized by gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). There must also be involvement of one major peripheral weight-bearing joint (*i.e.*, hip, knee, or ankle), which results in the inability to ambulate effectively; or involvement of one major peripheral joint in each upper extremity (*i.e.*, shoulder, elbow, or wrist-hand), which results in the inability to perform fine and gross movements effectively. 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.02. Even were plaintiff to demonstrate that he had joint space narrowing, bony destruction, or ankylosis of the affected joints, he can not show that he has an inability to ambulate effectively. As discussed above, the medical evidence demonstrates an essentially normal gait. (*Id.* at 331-32, 370-71, 438, 443-44, 675-76, 704-05, 718-19, 742-43, 747-48). Nor can he demonstrate an inability to perform fine and gross

movements effectively. After he completed inpatient rehabilitation in March 2010, plaintiff never complained of an inability to handle or finger objects. (*Id.* at 326-28, 330-32, 344-47, 357-58, 360, 370-71, 434-39, 443-44, 670-75, 704-05, 713-28, 734-50). And, as discussed above, the Louisiana Vocational Services only precluded plaintiff from lifting heavy objects. (Doc. #16-1, pp. 1-53).

While the Court recognizes that plaintiff cites the Court to evidence to support his position, it is axiomatic that this Court may not try the issues *de novo*, re-weigh the evidence, or substitute its own judgment for that of the Commissioner. *Carey*, 230 F.3d at 135. As long as the ALJ's conclusion is supported by substantial evidence, this Court must uphold it even were it to arrive at a different conclusion. *See Arkansas*, 503 U.S. at 112-13. Accordingly, substantial evidence and relevant legal precedent support the ALJ's finding that plaintiff's impairments do not meet or equal the requirements of Listings 1.02, 11.02, 11.03, and 11.04B.

     **5.**     **Whether substantial evidence supports the ALJ's RFC assessment.**

Plaintiff argues that the ALJ erred in not considering the medical source statement from Dr. Monica Benson, who filled out a "Medical Source Statement of Ability to Do Work-Related Activties (Physical)." (Adm. Rec. at 729-32). On this form, Benson checked boxes that reflect, plaintiff maintains, limitations related to plaintiff's work-related environment with hazardous machinery, temperature extremes, and sharp objects. (*Id.*). Plaintiff argues that grain operation work and industrial kitchens – both past relevant work of plaintiff as testified by the VE – would contain the presence of such limitations.

The ALJ noted the existence of the form but declined to give it any weight. (*Id.* at 19). As the ALJ noted, the signature was illegible and there was no indication of who signed the form. (*Id.* at 19). Neither can the Court decipher the signature. In addition, he found that there was "no

14

explanation or clinical findings for the limitations indicated." (*Id.*). As noted, Benson merely checked boxes on the form, providing no medical support for the medical diagnoses. An ALJ can assign less weight to a physician's opinion when it is brief and conclusory. *Allison v. Heckler*, 711 F.2d 143, 148 (10th Cir. 1983).

The ALJ also recognized that the record demonstrates that plaintiff's seizures were well-controlled with medication. (*Id.*); *see also Garcia v. Astrue*, 293 Fed. Appx. 243, 245-46 (5th Cir. June 26, 2008) (noting that a condition is not severe if well-controlled by medication). An ALJ may properly reject all or portions of a medical source's opinion when the overall evidence supports a contrary conclusion. *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). Thus, the ALJ gave substantial reasons for rejecting the form. (The Court notes that the ALJ gave significant weight to the other treatment notes of Benson.)

After considering all of the evidence, including the medical records and plaintiff's testimony, the ALJ posed a hypothetical question to the vocational expert. (Adm. Rec. at 19-20, 39-41). This hypothetical question properly incorporated all of plaintiff's limitations supported by the record and recognized by the ALJ. *See Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002) (upholding ALJ's hypothetical question when it scrupulously incorporated all of the claimant's disabilities supported by evidence and recognized by the ALJ). The ALJ only needs to incorporate in the hypothetical questions the limitations that the ALJ considers supported by the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988). Based on the hypothetical question, the vocational expert testified that plaintiff can perform his past relevant work as a fast food cook/worker and as a cleaner. (Adm. Rec. at 39-41). "A vocational expert is called to testify because of his familiarity with job requirements and working conditions. 'The value of a vocational

15

expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed.'" *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (quoting Fields v. Bowen, 805 F.2d 1168, 1170 (5th Cir. 1986)). It is well settled that a vocational expert's testimony, based on a properly-phrased hypothetical question, constitutes substantial evidence. *Bowling v. Shalala*, 36 F.3d 431,436 (5th Cir. 1994).   Accordingly, the Court finds that the ALJ properly relied on the substantial evidence adduced from the VE that plaintiff can perform his past relevant work as a fast food worker.

Plaintiff also contends that the ALJ erred when he failed to determine plaintiff's ability to sustain work. However, the ALJ's RFC determination includes an assessment of the nature and extent of the individual's limitations and determines that the claimant can work "on a regular and continuing basis." 20 C.F.R. § 416.945(b)-(c); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 at *3 (July 2, 1996). Further, SSR 96-8p distinguishes between what the ALJ must consider and what the ALJ must articulate in the written opinion. See 1996 WL 374184 at *7. SSR 96-8p does not require an ALJ to discuss all of a claimant's abilities on a function-by-function basis; rather, an ALJ must explain how the evidence supports conclusions about a claimant's limitations and discuss the claimant's ability to perform sustained work activities as the "Narrative Discussion Requirements" are set out. *See id.*   This, the ALJ did.

Here, the ALJ met these requirements when he expended six pages narratively discussing the medical evidence, symptoms, and opinions about plaintiff's impairments and assessed his RFC. (Adm. Rec. at 13-19). The ALJ noted that plaintiff's status post gunshot wound with traumatic brain injury and epilepsy impacted his ability to engage in all work activities. (*Id.*). The ALJ also noted that the objective medical evidence does not support any additional limitations other than

those included in his assessment. (*Id.*). Such evidence supports the ALJ's conclusion that plaintiff can perform work on a regular and continuing basis.

The Fifth Circuit does not require that an ALJ make a specific finding that a claimant can maintain a job on a regular and continuing basis unless "the claimant's ailment waxes and wanes in its manifestation of disabling symptoms." *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003). The Fifth Circuit has further held that claims that one has "good days and bad days" does not rise to the level anticipated by *Frank*. *Perez*, 415 F.3d at 465.

While plaintiff may have experienced occasional seizures, the evidence does not demonstrate that his seizure disorder waxed and waned so as to result in "periods of incapacity." *See Frank*, 326 F.3d at 619. As plaintiff has cited the Court to no evidence showing that he experiences "periods of incapacity," he fails to show that his impairments waxed and waned as required by Fifth Circuit case law, and the ALJ was thus not required to make a separate finding regarding his ability to sustain employment. The Court finds that substantial evidence supports the ALJ's RFC determination.

### 6. Whether the ALJ erred when he refused to consider plaintiff's "financial inducements" argument.

While it is as unclear to this Court as it is to the Commissioner, it appears that plaintiff lastly argues that McDonalds abuses its cognitively-impaired employees by requiring them to engage in hazardous and inappropriate job tasks to reduce labor costs. The gist of this argument appears to be that McDonalds engaged in this practice because it faced a revenue loss in 2012 based on its European markets and the sinking of the value of the Euro. Plaintiff apparently argues that due to an anticipated earnings loss, individual McDonalds' franchisees assigned improper job tasks to individuals with cognitive impairments. But plaintiff has failed to provide any proof of

17

this alleged abuse apart from an online article from bloomberg.com that McDonalds was expected to face such a revenue loss. Based on the report for Louisiana Vocational Services, plaintiff was assigned normal job tasks such as working at the grill, frying chicken nuggets, and cleaning the lobby. (Rec. Doc. #16-1 at pp. 1-53). Plaintiff has not explained how these duties were dangerous or inappropriate to cognitively-impaired individuals or, more specifically, to him. To the contrary, and as noted above, plaintiff appeared to thrive in his job at McDonalds as his manager asked him to be a crew trainer. (Rec. Doc. #16-1 at p. 47). Because plaintiff has failed to demonstrate error, the Court finds that this argument lacks merit.

## VI.   CONCLUSION

Accordingly,

**IT IS RECOMMENDED** that plaintiff's Motion for Summary Judgment be DENIED, the Commissioner's cross-motion be GRANTED, and plaintiff's case be DISMISSED WITH PREJUDICE.

### NOTICE OF RIGHT TO OBJECT

Objections must be: (1) specific, (2) in writing, and (3) served within fourteen (14) days after being served with a copy of this report.   28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b). A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the un-objected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error.   *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 2nd day of September, 2016.

_____

**DANIEL E. KNOWLES, III
UNITED STATES MAGISTRATE JUDGE**

19